Good morning. May it please the Court. I'm Kip Malley, and along with me is Hannah Blimestale from Winston & Strong, representing GE Capital in this matter. I think we've brought you an issue that's a relatively straightforward question of bankruptcy law. And the question is, is a secured creditor paid from an asset sale outside of a plan of reorganization entitled to the benefit of its bargain for reasonable to false interest under Section 506B, which governs the rights of secured creditors? The Fifth and Seventh Circuits have resolved this issue. They've held that Section 50B entitles the creditor to reasonable default interest under those conditions. That's the Terry, the Layman, and the Southland cases that we've cited in the brief. In this circuit, the Enswipe case has held an oversecured creditor cannot collect default interest, whereas defaults are cured under a Chapter 11 plan. Under a Chapter 11 plan. Under a Chapter 11 plan. That's the distinction between that case and this case. The distinction I would like you to get. This is a 363 case. Okay. Cure under Chapter 11 is governed by Section 1124. 1124 meaning the plan either leaves the creditor's rights unaltered or that monetary defaults are paid, terms are reinstated, and damages are compensated. Enswipe viewed a cure under the plan as nullifying default interest in returning the parties to a pre-bankruptcy status. The bankruptcy judge below felt that that ruling constrained her from considering default interest at all in our case. Even though the facts here, payment outside a plan as opposed to under a plan, are very distinct from Enswipe. And even though cure, as defined in 1124, is impossible when the creditor's security has already been liquidated. However, in making that ruling, she recognized that there is confusion in this circuit on that and agreed to certify it for direct appeal. Well, 363 applies regardless of the form of relief sought. In other words, it applies in Chapter 7 case, 11, 13, whatever. 363 is how a debtor disposes of property. Right. And it governs that. Lower courts in the circuit have rendered mixed decisions, and I guess that's why we're here. Right. So why do you think it makes a difference that it's outside a Chapter 11 plan? I mean, that's the pivotal issue. Does it make a difference that it's outside of Chapter 11? It does. When you are dealing with a secured creditor's property inside the plan, you have to comply with the provisions of 1123, 1124, or perhaps 1129. Right. 363 is a debtor's motion. A secured creditor is sitting there and the debtor goes into court and says, I've decided to sell that creditor's collateral. You can't do much about it except go to court and say, well, make sure my lien attaches to the proceeds, make sure that I am not somehow harmed. Under a plan, if they're going to use your collateral, they have to comply with a number of steps. And one of those steps might be, depending on how they treat your loan, it can go three ways. They can sell your collateral outside a plan. They can deal with your loan inside the plan and impair you by in some manner not meeting all your terms. They can deal with you as unimpaired. Or they can cram you down in 1129 hearing. But the issue here is there was no plan and none of those provisions provide. The EMSWITE reasoning is based on the cure provisions of 1124, which says when you are cured, you are returned to pre-default status. When you are returned to pre-default status, well, then you don't owe default interest. Well, that's the EMSWITE ruling, but it doesn't apply in 363. There was no cure. The collateral was liquidated by the debtor. None of it's present here. I mean, that's the point. None of the elements of 1124 are present or need to be present. And they couldn't come into play, as I said, once the collateral has been liquidated. GE's capital claim was paid before the Chapter 11 plan was even filed. GE capital was not paid through the plan process. You cannot return a secured creditor to pre-default status when there's no collateral. The 57th Circuit should recognize that there is a presumption that an over-secured creditor is entitled to his contract terms, including default interest. This position recently endorsed in the Travers case by the Supreme Court. The creditor's entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation subject to any qualifying or contrary provisions. And you say there are none. There are none. I'm saying under 363 and 506, which govern the sale of secured creditor's collateral, there are no qualifying or contrary provisions of the Bankruptcy Code. Here we have a contract with a default interest provision that's valid under State law. Here payment was made outside the Chapter 11 plan under 363, and there's nothing in the Code that, to quote Travers, either qualifies or is contrary to payment of reasonable default interest under those provisions. The Fifth and Seventh Circuits got the issue right, and there's a fundamental reason. The plan provisions of the Code, the concern is why involve reorganization, basically. Involve leveling the playing field, adjusting contract rights, securing defaults to prevent acceleration, terminating or reinstating executory contracts. Should we go all the way to deciding what the 94 amendments do to Enswite? I think a lot of bankruptcy judges would like you to. I don't believe you need to get there today, because I believe it's quite clear that Enswite does not apply out of the plan situation. So if you're correct, what do we do with this case? Remand it for? I believe the record is developed enough that you should remand it with an instruction that GE Capital is to get its pre-default interest, which I could tell you from the record below is a reasonable rate as determined under the case. Because it's only 2 percent. It's only 2 percent. You should remand it with an instruction that GE Capital is entitled to reasonable attorney's fees. We can get to that, too. We operate under indemnity provision. The bankruptcy judge below denied us attorney's fees on the grounds we were not the prevailing party. We have an indemnity with the debtor. And you weren't the prevailing party below, so it's hard to see that's wrong. And then there's a clause which says the debtor indemnifies us when third parties show up and sue us on something based on this predetermined. And it survives termination. It's not a traditional bilateral attorney's fees provision. If we don't remand with instructions based on our finding, the 2 percent differential is adequate or is appropriate, then what would the issue be before the bankruptcy court? Well, if I understood you, if you do not remand, I suppose it would depend. No, he said what happens if we remand. If we reverse remand, but we don't take your invitation to decide on this record, that it was an equitable rate, is that what is then back before the district, I mean, the bankruptcy court? It would be back before the bankruptcy judge to determine whether or not the 2 percent was reasonable under the circumstances as required under the cases. Okay. Talk about reasonableness. The uncontradicted evidence below is the 2 percent. You know, I understand your argument. It's pretty difficult for us to decide reasonability absent any sort of record on that. And we can just say, you know, yeah, it's only 2 percent, but that denies your opponent the right to contest the 2 percent, put on other evidence. Why should we do that? Well, it's in the record, Your Honor. In the record below you is the testimony given before the bankruptcy judge, Mr. Fitz at GE Capital. Right. But we end up weighing that evidence here on appeal. Why should we do that? Well, because basically it's uncontradicted. The debtor, the committee in this case, took a risky path. They brought this motion without evidence. They brought it on a legal standard only. We came in and said, well, we think the legal standard is ours. And, by the way, here's our evidence. They could have come in and said, given evidence, that 2 percent wasn't reasonable. They chose not to do so. I'd say they waived the right. And I'd say this Court, with that waiver, this Court can direct that the bankruptcy court can award the default interest we asked for. And at the end of the day, how much money is at stake here? $165,000. But there's obviously larger information. Right. It's so unsettled in the Ninth Circuit that obviously it was worth taking on appeal to get some certainty for creditors. But I've got a point. The evidence I just spoke of, Mr. Fitz, it's almost the exact same evidence that the court in the Terry case heard, the appellate court, the Fifth Circuit heard, which led them to conclude that the default interest rate there, 3 percent, was a reasonable pricing mechanism and not a windfall. Address very quickly a couple of cases that came. As we said in our briefs, and I think everyone will acknowledge, the cases below are all of the map on this because of the uncertainty of how to apply it. It seems to me the committee is relying chiefly on two cases. They're relying on the bankruptcy appellate panel's case in Casablanca, which involved a 363 case like ours. And they rely on the 433 South Beverly, which also involved a 363 case. All the other cases seem to come from planned situations. In Casablanca, the bankruptcy appellate panel examined the underlying evidence and determined the default rate there, which was 25 percent, was not a price adjustment to cover losses, but more of a penalty to influence the debtor. But then, having said that IMSWIDE applied, they then remanded the case for further consideration for, quote, the purpose of default of, for finding the purpose of the default interest rate. It's a curious result because if IMSWIDE did apply, they would have reached the same result our judge here did here and said you don't even consider it. Actually, Judge McKee's concurring opinion makes a little more sense. He felt IMSWIDE did not apply outside of plan because of the plain reading of 363, but he felt the result was correct and he concurred because it wound up going back to consideration of default interest. The only other case they cite that squares with our facts is 433 South Beverly. In that case, there was a 363 sale. But the bankruptcy judge there, Judge Lax, without citing any authority, equated a 363 sale with a 365 executory contracts provision for purposes of illustrating that cure wasn't limited to Section 1124, or apparently that was her purpose. The problem with the analysis is that Section 365 has its own cure provisions that essentially duplicate those of 1124. In addition, Section 365 expressly excludes its applicability to loan agreements. If you were searching for post sections to compare, you couldn't find two that were less alike in purpose and effect. And I think it seriously undermines the reasoning of her case that 1124 cures extend outside of the plan process. Let me change directions just for a second. Let's assume hypothetically that the default provision at issue was an event of bankruptcy. Would the same analysis still apply? I'm sorry, Your Honor, I missed the last statement. Yes. Let's assume that the default here at issue was an event of bankruptcy. In other words, if you file bankruptcy, you're in default even though your payments are current. Do you still have the same result? I think you do. Default's a default. You see, the problem I have with that and fundamentally with your position is one of original intent of the bankruptcy code. And I realize that Congress has tinkered with it, but the theory was that you end up, especially with acceleration clauses and so forth that are triggered by the event of bankruptcy, that those were not to be effective in bankruptcy. And if we adopt your position, it seems to me that we're embracing all of that pre-code law, right? Well, I believe the position we're urging is always subject to an equity test. The Bankruptcy Court is entitled, if not obligated, to look at each of these and see if, in fact, under the totality of the circumstances, the application of default interest would be equitable in bankruptcy. Were it not to be equitable, then they would be on grounds to reduce it or strike it or come up with some other conclusion. So what standards should bankruptcy judges use in applying that test? Well, I think if guided by the cases, I think you guide as to, first, whether or not the default interest rate is actually an amount to a penalty, such as the Casablanca case did. Or here, as Mr. Fitz testified, it goes to compensate the creditor for the work that has to be done once a debtor defaults, similar to the Terry case. Tested money here is this debtor was in default for 11 months before GE was paid off. Somebody at GE had to work with the debtor. Somebody at GE had to go and monitor the collateral. Somebody had to do things every day. That probably amounts to $165,000 pretty fairly, 11 months of work by people at GE because of the default. That was the purpose of the default interest rate. It wasn't a penalty. It was a price. That's not true of all defaults, though. I mean, for example, a default provision that's triggered by bankruptcy, default provision by a creditor deeming itself insecure and so forth, those are different. It's an argument. I believe that we have cases, and I believe Mr. Fitz's testimony backs it up, that to some extent, or an often extent, default interest is a pricing mechanism. That's the words that they use. It goes into calculating the risk. They're selling credit. They could easily, they could give a loan at 9 percent and no default rate, or they could give a loan at 7 percent plus 2 if things go wrong. They're both just prices. You have about two minutes left.  You have about two minutes left. Do you want to save for a break? Let me save that for a moment. Thank you. May it please the Court, Harry Hockman, Patulsky, Stangs, Hill, and Jones, on behalf of the Appellee Future Media, the Committee, Official Unsecured Creditors Committee of Future Media Productions. I plan to focus on three points, the third of which I think, based on the panel's comments, is probably the one you're most interested in, which is the application of Entz-White in the context of a 363 sale. But it struck me that defending Entz-White against the argument that it was abrogated by the 94 amendments is logically a first step. So, if you interrupt me, I'll understand, but that's where I was at least intending to go. But first, I think it should be clarified what is or isn't on appeal, because I think the Court, to a certain extent, is being asked to render an advisory opinion. When GE Capital requested leave to bring a direct appeal, it cast this as a 506B issue. And it suggested that there's some hue and cry from lower courts that they need guidance on the proper application of 506B. And this is an opportunity to bring the Ninth Circuit into line with decisions from other circuits. From our perspective, that's a significant overstatement of the issue before the Court. The lower court was not asked to decide what the proper standard was under 506B for determining the appropriate right of interest. Our motion was brought on a much narrower ground, which was simply that there was a cure, the cure nullified, the cure is intended to reinstate the loan as it existed prior to default, and therefore that nullifies default interest. Let me jump ahead to a different topic, if you don't mind. I'm concerned about the Travelers case. Do you think that changes the equation for us? The Travelers case? Yes. The Supreme Court's decision on Travelers, which reaffirmed the role of state lost contract terms and so forth, it has some implication here. I'm not sure it changes the result in this case, Your Honor, because the state law is overridden by certain provisions of the Bankruptcy Code. Well, that's what we thought in Travelers, and the Supreme Court disagreed with us. So isn't the wind blowing a different direction? Well, that would be, that would reinforce the argument, I suppose, that 1123D abrogates N. Swype because 1123 reflects that principle, that a cure amount under a plan is to be determined in accordance with the underlying agreement and applicable non-bankruptcy law. But what I want to lay out for the Court, and while I think we did a reasonably good job in the brief of pointing out that that's not what Congress intended when it enacted 1123D, I think it probably behooves our position to make, to demonstrate better the textual basis in the Bankruptcy Code for the continued viability of N. Swype. And that is that the same 94 amendments that gave us Section 1123D also gave us Section 365B2D. And Section 365B2D provides that in satisfying, that in curing a defaulted contract for purposes of assuming the contract, that a debtor does not need to satisfy any provision that provides for a penalty rate or a penalty provision arising from a non-monetary default under the contract. Right. But that's an executory contract provision. Why do you think it relates to 363? By an indirect route, Your Honor. Very indirect. Well, I'm not sure. The Section 1124-2 expressly incorporates Section 365. And the net of that is that in order to cure the default rate, I'm sorry, in order to cure a loan default through a plan, a debtor is not required to satisfy provisions arising from defaults of the type specified in 365B2D. So that's the linkage. So far, so good. But how do you link 365 with 363? That, as I mentioned, was going to be the third point, but let's do it. Well. The Court can ask, of course, why, where is the basis, statutory basis, Section 363 for curing a loan default and nullifying default interest? But I think the issue can be recast, I think, legitimately as follows, which is that the textual basis in the code for overriding the loan default are the plan provisions that I discussed, which is 1124 and its incorporation. Right. But if you're selling outside a plan, why does it relate? Why does cure come in at all? Well, the question, I think, is whether the courts in Casablanca and 433 South Beverly had the ability, had the equitable authority to treat a payment that is made pursuant to a sale in the same manner as if it had been made pursuant to a plan and, therefore, carried with it the ability to cure the loan default. Well, let me go back to Travelers. Are you familiar with the Travelers case? I'm afraid that's not my case. You're not. And it's not even mentioned in your briefs, in your brief, even though the other side leads with it. And it's been brought up a couple of times. You're not familiar with the Travelers case? It is. The Supreme Court case. It's in the other side's, both the other side's briefs, and it's just not in yours. This is, I guess, perhaps we were a little too glib, but I don't think so, with the bankruptcy court's decision was based on the ability to cure. And then there's a statutory analysis, which I think strongly reinforces that Congress has the ability to override state law contract interest. Right. But that was the issue in Travelers, in a sense. We were saying that under the bankruptcy code, there's a different analysis that the Supreme Court said, no, you've got to go back to the contractual interest. Now, I realize that's a different case, but the same analysis applies in terms of the Supreme Court's breathing new life into pre-bankruptcy contract terms. And this is a pre-bankruptcy contract term. It's a pre-bankruptcy contract, but that would override specific congressional law, it would override law to the contrary. Well, what's there in the text of 363 that supports your position? The textual basis is Section 1124, and I think the question is whether a bankruptcy court can extend it. All right. Let's assume it's a sale in a Chapter 7 case using 363. Why should your analysis apply? I'm not sure that it would. It can't apply. If you're saying that the only reason that this provision works is it's a Chapter 11 plan, and you have to read Chapter 11 in accordance with 363, then it doesn't work in a Chapter 7 case. It doesn't work in a Chapter 13 case, right? So that would indicate there's nothing standing alone in Section 363 that means that an over-secured creditor doesn't get default interest. And if that's true, then I don't understand if it's freestanding in a Chapter 11 case, it's not part of the plan, that the same analysis wouldn't carry forward. Because this was a Chapter 11 case, and in a Chapter 11 case, the debtor would have had the right to cure that loan default under 1124. And I think it's important to note, while there is nothing in Section 363 that specifically relates to the cure of a loan default, there is also nothing in Section 363 that authorizes a secured creditor to be paid from the proceeds of the sale. There is no express authorization to pay a secured creditor. If the letter of the law were followed, that money would be held by the debtor pending the effective date of a plan of reorganization. And, in fact, that's what happened here. There was a liquidating plan of reorganization filed immediately after the liquidation sale. It was GE Capital that was holding all the cards. It's not a situation where a debtor comes in and does something over the secured creditor's objection. They had an agreement with the debtor that they would file bankruptcy, take advantage of the bankruptcy in order to facilitate the liquidation sale by selling free and clear of liens and interests, and pay GE and remit the proceeds to GE to satisfy its claim, followed immediately by a liquidating plan. And the committee objected that that payment ought to be treated as if it were made pursuant to a plan for purposes of looking at the default interest issue. And that objection was unresolved. It's one of the equitable facts and circumstances that the bankruptcy court would consider had she been asked to roll on the equities. Okay. Let's assume that immediately after the sale, GE had moved to convert the plan to a Chapter 7. Okay? And the court converts it to a Chapter 7. Under your analysis, they get default interest if it's converted to a Chapter 7, but they don't get default interest if it's a liquidating 11 plan, right? Well, under Your Honor's analysis, applying Travelers, which I'm afraid I was unable to effectively respond to. No, this has nothing to do with Travelers. It has to do with what happens in 363. If I understand your argument, if it's a Chapter 7 case, they get default interest if it's sold in a Chapter 7. If it's sold in a Chapter 11, even if it's a liquidating 11 plan, they're not entitled to default interest because it's an 11. That's your argument, right? Correct. So logically follows. The court authorizes a 363 sale in the Chapter 11. Proceeds get sold, retained, converted to Chapter 7. They get default interest, right? They get the $165,000, right? If they were successful in converting the case. Yeah. Well, does that make any sense to make that difference between a true liquidation in a Chapter 7 and a liquidating 11 plan? I think it would not make sense if the court was looking specifically to Section 363 for the authority to cure a loan default. But that is really not what we're talking about here. But doesn't that make the point that if it's a plan, if it's sold pursuant to a plan and you're actually using it, you may use the cure provisions. If it's being sold outside the plan in Chapter 11, then the regular old provisions of bankruptcy ought to apply. What's wrong with that analysis? Because the debtor would have had a right in Chapter 11 to cure under the express provisions of 1124. And I think a court has equitable authority under Section 105 to treat a payment made in the context of a sale as if it had been made in the context of a Chapter 11 plan, which that Chapter 11 debtor had a right to propound and to convert. If that doesn't trash travelers, I don't know what does. You know, it's rather amazing. If you go back and read the blue brief, travelers is all over it. Travelers is all over the gray brief. And it's rather amazing that you don't know what the case holds. You're not familiar with it. I'm struggling with that as I stand here, Your Honor. But this was a – this is not a 506B case. The court did not rule on that basis. And while GE says that we took a risky strategy in bringing our motion under the cure cases as a matter of law, that's not so. We had no obligation to move on all possible grounds in our motion. They are free, if this matter is remanded, to go back to the bankruptcy court and say, hey, they waived their arguments on the equities by not making it in the first motion, but I don't think that's going to apply at the bankruptcy court level. She ruled strictly as a matter of law. We had a two-page legal argument in our brief. We prevailed. If you don't prevail, do you have an argument against 2%, an equitable argument against 2%? Absolutely. This was a oversecured creditor with a 40% equity cushion in its collateral. It demanded that it be – that the debtor conduct an immediate sale. The debtor agreed. It moved for a sale within a day or two of filing the bankruptcy. It was – a liquidating plan was filed immediately afterwards. The committee objected that this ought to be treated as if the payment were made under a plan, and that objection was unresolved at the time the sale was conducted. GE wanted to plunge forward with that. In those circumstances, there's no reason why they would be entitled to default interest. And I think if it does go back on remand, the court will consider it. You may prevail yet. I believe we will, Your Honor. It's just we took the less fact-intensive, the more economical argument below. We had the authority was in our favor. We made the motion. We prevailed. If we have to go back and bring the motion as a more – you know, on a factual basis, we'll do that. And you took the risk that the bankruptcy judge might say, I'm sorry, the record's closed. You had your shot, and that was that. That's a risk. I don't believe that that will happen. I do want to emphasize, though, that – But on appeal, now that the record's been closed and you've made your tactical choice, why shouldn't we say, well, there's no contrary evidence? That's the end of the game. Because the bankruptcy court did not rule on that issue. But the facts – I mean, there's nothing – you didn't factually dispute it, though. That's the problem. The facts that would – Normally I would be very reluctant to do that, but it is a closed record. You didn't dispute it factually. You put all your chips on the legal argument, and that was a fair tactical choice. But if they come – if we bring a motion on the basis that, as a matter of law, the cure cases from the Ninth Circuit provide that the payment through the sale is equivalent to a payment through the plan and it nullifies the right to default interest, and they respond with an argument that our 2 percent was reasonable, I don't think we have – we need to follow their lead in broadening the range of a motion that we brought initially. And I don't think it would be proper for – it's not in a posture, I think, where this court could then go ahead and balance those equities. You're about a minute over time. Anything else you want to tell us? There is no authority in the Bankruptcy Code to pay a secured creditor straight from a sale. Courts do it all the time. They justify it in a critical vendor motion at the outset of a bankruptcy case. The justification for paying a creditor outside a plan is Section 105 of the Code. And if a court has authority to do that and the exercise of its equitable authority, then I don't think it's any more of an equitable stretch under Section 105 to find that the court has a corresponding ability to place conditions on the terms of that payment. And one condition would be if you're going to get paid through a sale that's a precursor to a plan, we're going to treat that payment as if it were made pursuant to the plan. That, I think, is the substantive support I can offer for the Casablanca and 433. Thank you, counsel. Thank you. I'd like to address first the argument that they didn't ask for determination of the interest rate. The motion is entitled Notice of Motion in Motion for Order Determining Interest Rate. That's why we responded the way we did by putting in our evidence. There's two aspects to a secured creditor. First, the debtor controls the property. The debtor can sell it at 363 with protections to the secured creditor. Under 506B, the secured creditor retains an interest in the proceeds of the property, and you are paid under 506B. We didn't come in and ask for injunctions under Section 105. The money belonged to us. It was just in the debtor's bank account. Then you work out a stipulation from the debtor as to when and how you're going to get paid, because they may or may not propose a plan. Meanwhile, the creditor's entitled to its money. We didn't rush out and say there was some crisis that needed this. The bankruptcy judge herself suggested this avenue. It wasn't us. She said, look, I'm going to rule, but I agree the law's a mess, and if you want to take it to the Ninth Circuit, I'll certify it. So we did. One last point. A ruling favoring the committee on this interest rate issue would be contrary to the precedent established in the Fifth and Seventh Circuits. I believe there's law in this circuit, and it would seem seldom appropriate to create an unnecessary inter-circuit conflict. I think the law here is the Taffey case. There might be cases where you should, I would agree, but this can't be one of them. The law is too clear, the reasoning of the Fifth and Seventh Circuits is too sound, and those decisions mesh with both the Ninety-Four Amendments and the Travelers' Decision. Thank you. You don't think Ence White can be reconciled with the other circuit's decisions, right? I'm not sure. I don't think you don't believe that Ence White can be reconciled with decisions of the Fifth and Seventh? In all honesty, I do not, and I pray for you. So then the circuit conflict's already there. I don't think, under these circumstances, Ence White cannot be meshed with other circuits. Right. Thank you. Thank you both for your arguments. The case has heard and will be submitted for decision. We receive the argument in Farrar v. District of Hawaii.
judges: Trott, Thomas, Fisher